

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

Received in WC

AUG 1 3 2013

RECEIVE

AUG 2 2 2013

OFFICE OF ___L COUNSEL

EARNESTINE HARGROVE
  Vs.
AARP

C.A. No.    2013 CA 005265 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge NATALIA COMBS GREENE
Date:   July 31, 2013
Initial Conference: 9:00 am, Friday, November 01, 2013
Location:   Courtroom 317
                500 Indiana Avenue N.W.
                WASHINGTON, DC  20001

Caio.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

_____
Plaintiff

vs.                                    Case Number **13 - 0 0 0 5 2 6 5**

_____
Defendant

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_____                    _Clerk of the Court_
Name of Plaintiff's Attorney

_____                    By _____
Address                                                  Deputy Clerk

_____                    Date _____
Telephone
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

EARNESTINE HARGROVE
7319 Alaska Avenue NW
Washington, D.C. 20012

        Plaintiff,

        v.

AARP
601 E Street N W
Washington, D.C. 20049

serve:  C.T. Corporation System
        1015 15th Street, N.W.
        Washington, D.C. 20005

        Defendant.

Civil Action No. _____.

**13 - 0 0 0 5 2 6 5**

RECEIVED
Civil Clerk's Office
JUL 3 1 2013
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Earnestine Hargrove, by and through her under-signed counsel, and sues Defendant AARP, and for each cause of action, Plaintiff declares and avers as follows:

## PRELIMINARY STATEMENT

1.    This action is brought against Defendant AARP by Earnestine Hargrove, Ph.D., under the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*, as amended, and the D.C. Human Rights Act of 1977, D.C. Code § 14 *et seq.*, as amended, for failure to accommodate, retaliation, and constructive termination.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

## JURISDICTION

2.      Jurisdiction is conferred upon this Court by D.C. Code § 13-422.  Defendant AARP has its corporate headquarters in the District of Columbia at 601 E Street NW.  All events relevant to this matter occurred in the District of Columbia, where Plaintiff lives and worked. Plaintiff has exhausted all administrative prerequisites to suit.

## VENUE

3.      Venue of this action is properly placed in the Superior Court for the District of Columbia pursuant to D.C. Code § 11-921 because all events giving rise to Plaintiff's claims occurred within the District of Columbia.

## PARTIES

4.      Plaintiff Earnestine Hargrove is, and was at all relevant times, a resident of the District of Columbia.  Plaintiff is an "employee" within the meaning of 42 U.S.C. § 12111(4) and D.C. Code § 2-1401.02(9).

5.      Defendant AARP has its corporate headquarters in the District of Columbia and is an employer within the meaning of the 42 U.S.C. § 12111(5) and D.C. Code § 2-1401.02(10).

## FACTS

6.      Earnestine Hargrove, Ph.D., began working for AARP (then known as the American Association of Retired Persons) in December 2000 as a Senior Research Advisor.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-5906

7.      As a Senior Research Advisor, Dr. Hargrove had the following responsibilities:

a.      Conceptualize and design complex research projects;

b.      Help ensure the quality of the conceptualization and design of other research projects;

c.      Supervise vendors or other staff who implement the data collection plan;

d.      Determine strategies for data analysis; and

e.      Lead research project or functional teams, including those that support Association-wide strategic activities.

8.      Dr. Hargrove's position required analytical skills, the use of judgment, strong communication skills, and problem-solving techniques. For that reason, the position required an advanced degree (preferably a Ph.D.) and extensive highly technical research experience and knowledge.

9.      Dr. Hargrove satisfied the requirements for this position. She had a Ph.D. in Business Administration (Marketing/Statistics) and extensive technical research experience and knowledge. Dr. Hargrove also had extensive leadership experience, including most recently serving as Director of Marketing Research for The United Way of America and formerly serving as Associate Director for Sales and Marketing for the D.C. Lottery.

10.     Around the time that Plaintiff was hired, she informed AARP that she had been diagnosed with carpal tunnel syndrome and had had surgery for the condition in 1986.

11.     Shortly after commencing her employment at AARP, Dr. Hargrove provided documentation of her condition and a request for accommodation from her physician to her supervisor. AARP approved the request and gave Dr. Hargrove a high back orthopedic chair and an adjustable keyboard tray.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

- 3 -

12.     Despite the orthopedic chair and adjustable keyboard tray, Dr. Hargrove's long hours of computer use at work caused her hand conditions to worsen.

13.     In January 2002, Dr. Hargrove's physicians directed her to type no more than three hours per day.

14.     In June 2002, Dr. Hargrove had surgery on her right thumb to treat her stenosing tenosynovitis. She had another surgery in 2004 to correct wrist problems.

15.     Dr. Hargrove continued to perform the essential functions of her position, despite her physician's keyboarding time-restrictions, because much of the keyboard-intensive work on her projects was performed by junior staff members. In addition, Dr. Hargrove's supervisor accommodated Plaintiff's typing restriction by providing her with voice-recognition computer software.

16.     Senior Research Advisors at AARP, such as Dr. Hargrove, regularly worked with Research Analysts. Research Analysts perform data analysis, quantitative survey design and implementation, qualitative research design and management, and data manipulation. The teams also included Research Specialists. Research Specialists have basic knowledge of SPSS, the ability to create accurate charts and tables, and good proofing skills and library research skills.

17.     A substantial part of a Senior Research Advisor's job was meeting with internal clients, that is, representatives from other AARP departments for whom specific research projects would be conceptualized, designed and completed in support of their objectives. Dr. Hargrove spent a considerable amount of her time working with these internal clients to understand their needs so that she could provide the most appropriate research and consultation. She frequently

- 4 -

presented the results of the research her team completed to internal clients, senior managers and other stake holders.

18.     Dr. Hargrove's work as a Senior Research Advisor at AARP was consistently rated at or above expectations. Her work was also regularly lauded by AARP leadership.

19.     Dr. Nileeni Meegama became Dr. Hargrove's supervisor in May 2010.

20.     In the Fall of 2010, Dr. Hargrove began to experience significant increases in the symptoms of her ailments in her hands, wrists, and arms. This was caused in part by the departure of an intern who had previously provided Dr. Hargrove with support, such as using SPSS to do data runs, creating charts and graphs and Excel spread sheets.

21.     On October 13, 2010, Russell Rothenberg, Dr. Hargrove's treating physician, advised AARP that Dr. Hargrove had been diagnosed with chronic carpal tunnel syndrome and tendinosis in both wrists as well as osteoarthritis and Fibromyalgia. He also advised AARP that those conditions substantially limited Dr. Hargrove in the major life activities of (1) lifting or carrying; (2) performing manual tasks; (2) sitting; and (4) working.

22.     In his October 2010 letter, Dr. Rothenberg advised AARP of the accommodations that Dr. Hargrove needed. He stated that Dr. Hargrove could perform the essential functions of her position if accommodated with voice-recognition computer software; a keyboard tray; a computer mouse pad; a high-back orthopedic chair with arms; and limiting repetitive motion activity to one hour at a time no more than three times per day.

23.     In January 2011, Dr. Meegama evaluated Dr. Hargrove's work performance for the preceding seven months, the period of time during which she had supervised Dr. Hargrove.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel. (301) 656-6905
Fax (301) 656-6906

- 5 -

In that evaluation, Dr. Meegama described Dr. Hargrove as a "strong and diligent researcher," and said:

> She is professional in all of her interactions and is a stickler for delivering high quality materials. Earnestine stays on schedule, delivers on time and makes every effort not to miss deadlines. She is willing to adjust priorities as needed and supports and contributes to a positive work environment. . . . Earnestine works with minimal direction and often sets examples of completing high quality work, ahead of deadlines and anticipates and plans for work flow. She actively develops positive relationships within the department.

24.     In early 2011 Dr. Meegama began to assign projects to Senior Research Advisors without the support of Research Analysts and Research Specialists. The Research Department continued to employ Research Analysts and Research Specialists. However, instead of being assigned to work on particular research portfolios with particular Senior Research Advisors, the Research Analysts and Research Specialists were now assigned by Dr. Meegama as she determined.

25.     Dr. Hargrove reminded Dr. Meegama that she had medical restrictions that limited her ability to do keyboarding to three hours or less per day and that she relied on staff support as an accommodation to her disability so that she could perform the essential functions of her job without suffering further injury.

26.     Dr. Meegama refused Dr. Hargrove's request for staff support. As a result, Dr. Hargrove found it necessary to perform keyboarding for four to six hours per day in order to complete assigned projects.

27.     In February 2011, Dr. Hargrove reiterated her request for accommodations in a letter to Dr. Meegama.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

- 6 -

28.     Dr. Meegama responded to Dr. Hargrove's request for accommodations via email on February 23, 2011, explicitly refusing Dr. Hargrove's request for a limit on time spent keyboarding. Dr. Meegama stated that Dr. Hargrove could not do her job with that restriction.

29.     In March 2011, AARP supplied Dr. Hargrove with Dragon Dictation voice-recognition software. This software substantially reduced the time Dr. Hargrove spent keyboarding for emails, lengthy narratives, and the like.

30.     However, the voice-recognition software did not assist Dr. Hargrove in the production or manipulation of spreadsheets, databases, charts, and graphs. Moreover, documents produced using the voice-recognition software still required substantial editing using a keyboard.

31.     Dr. Meegama reviewed Dr. Hargrove's work again in July 2011. This time, however, she rated Dr. Hargrove significantly lower than she had done in January 2011. Nevertheless, Dr. Hargrove continued to be singled out for praise by other AARP managers.

32.     When Dr. Hargrove returned to work on September 20, 2011, following a five-week absence for jury duty, she devoted most of her time to an Association-wide effort to purge server drives of duplicate and draft documents. This required extensive keyboarding. This project also required that Dr. Hargrove clean-up unneeded paper files. This project required lifting, carrying, and moving large boxes and stacks of documents. Within a couple of days of her return to work, Dr. Hargrove experienced pain and numbness in her hands from this work.

33.     In the Fall of 2011, Dr. Hargrove spent four to five hours per day keyboarding as she tried to catch up with her substantive work following an absence due to jury service.

34.     As a result of using her hands and wrists far in excess of her medical restrictions during the fall, Dr. Hargrove suffered increased problems with and pain in her wrists and hands.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

- 7 -

On October 19, 2011, Plaintiff's Orthopedic surgeon diagnosed Dr. Hargrove with flare-ups of both hands.

35.     Dr. Rothenberg wrote a letter to AARP on October 25, 2011, describing Dr. Hargrove's diagnoses and restricting her computer work to no more than one hour three times per day.  He also stated that AARP's failure to accommodate Dr. Hargrove could cause a worsening of her medical problems.

36.     Dr. Hargrove provided Dr. Rothenberg's October letter to Dr. Meegama. Dr. Meegama denied the requested computer time restriction.  She offered no alternative accommodation.

37.     Dr. Hargrove requested as an alternate accommodation that she be assigned projects that had a long timeline or else be given sufficient staff support to allow her to work within her medical restrictions and still make deadlines. Dr. Meegama denied this request as well and offered no alternative accommodation.

38.     When Dr. Hargrove gave Dr. Rothenberg's October letter to Dr. Meegama, Dr. Meegama responded by stating that there were no projects that could be done within the doctor's restrictions. Dr. Meegama then came to Dr. Hargrove's office holding Dr. Rothenberg's letter, and stated to Dr. Hargrove that she had not approved the three-hour restriction in 2010 and that she would not do so now.  Dr. Meegama left Dr. Hargrove's office again and, again, returned a few minutes later and told Dr. Hargrove that she was taking away Dr. Hargrove's responsibility for the  Member Extension Focus Groups project. Dr. Hargrove had been able to perform the work necessary for that project without violating her doctor's restrictions.  Dr. Meegama reassigned responsibility for that project to an employee who already had a heavy workload.

- 8 -

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 645-6695
Fax (301) 656-6606

39.     On October 31, 2011, Dr. Meegama sent Dr. Hargrove an e-mail identifying Dr. Hargrove's assignments. All or virtually all of those assignments were at the Specialist level. At a staff meeting the next day, Dr. Meegama discussed the large number of projects in the department and the fact that many employees were swamped with work.

40.     In 2004, Dr. Hargrove had introduced the Editorial Interest Studies to AARP and implemented it. In 2011, Dr. Hargrove had been assigned the task of getting options and a proposal for that project for 2012. After Dr. Hargrove gave Dr. Meegama her doctor's note in October, Dr. Meegama reassigned that project to another employee. When Dr. Hargrove asked Dr. Meegama about that reassignment, Dr. Meegama stated that Dr. Hargrove's involvement was not needed. Dr. Meegama later reassigned some of that project back to Dr. Hargrove, though by then most of the work had been completed.

41.     In October 2011, Dr. Meegama again discussed the large and challenging workload in the department, particularly for focus group monitoring. Dr. Hargrove volunteered to monitor some focus groups, but Dr. Meegama declined.

42.     During this period, other Senior Research Advisors were afforded the support of Research Analysts and, occasionally, a Research Specialist, and were not required to do their own data analysis.

43.     Because of the extensive computer work which she was required to do, Dr. Hargrove experienced increasing pain and loss of functionality in her hands and wrist.

44.     Dr. Rothenberg wrote another letter to AARP on November 22, 2011, again reiterating Dr. Hargrove's diagnoses and restricting her computer work to no more than one hour three times per day.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

45.     From November 2011, through May 7, 2012, Dr. Hargrove regularly performed four or more hours per day of computer work in order to meet project deadlines.

46.     On May 8, 2012, at the direction of her doctor, Dr. Hargrove went on leave pursuant to the Family Medical Leave Act.

47.     When Dr. Hargrove returned to work from her leave on May 30, 2012, she provided AARP with a "return-to-work certificate" from her orthopaedic surgeon. The return-to-work certification restricted Dr. Hargrove to typing to no more than two hours per day.

48.     In mid-July, Dr. Meegama notified Dr. Hargrove that she intended to place Dr. Hargrove on a Performance Improvement Plan.

49.     On July 31, 2012, Dr. Hargrove's medical condition made it necessary for her to go out again on leave.

50.     On October 17, 2012, Dr. Hargrove provided AARP with a fitness for duty certificate specifying that she was fit to return to work subject to no more than one hour of computer work daily; working half days; and reevaluation of her condition in four to six weeks.

51.     AARP refused to allow Dr. Hargrove to return to work, asserting that she could not perform the essential functions of her position.   AARP proposed no alternative accommodations.

52.     On November 19, 2012, Dr. Hargrove was evaluated again by her physician, who issued a new fitness for duty certificate to AARP, noting that Dr. Hargrove "is slowly improving" and limiting Dr. Hargrove to "one-half days, five days per week, computer work 1-2 hours per day as tolerated."

Lippman, Semsker & Salb, LLC
1979 Old Georgetown Road, Suite 1180
Bethesda MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

- 10 -

53.   Again, however, AARP refused to allow Dr. Hargrove to return to work, claiming that Dr. Hargrove would be unable to perform the essential functions of her position with the accommodations that she sought.  AARP proposed no alternative accommodations.

54.   To date, AARP continues to refuse to allow Dr. Hargrove to return to work with medical restrictions.

55.   Plaintiff's chronic carpal tunnel syndrome, tendinosis of both wrists, osteoarthritis, and Fibromyalgia are the result of a fundamental breakdown of neurological and musculature systems of the body.

56.   AARP has never asserted that Dr. Hargrove's requested accommodations were unreasonably costly.

57.   The essential functions of the Plaintiff's position require that she design, conceptualize, and manage various research projects for various clients within AARP. Keyboarding was not an essential function of her position but only a peripheral function that facilitated the completion of essential functions.

58.   The Defendant's unlawful conduct in refusing to accommodate Plaintiff's disability caused her severe physical and emotional suffering.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

## CAUSES OF ACTION

### COUNT ONE

### FAILURE TO ACCOMMODATE
### IN VIOLATION OF THE ADA AND THE DC HRA

59.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 57 of this Complaint as if set forth in full herein.

60.     AARP's conduct as alleged herein constitutes an unlawful failure to accommodate Dr. Hargrove's disability as is required by the Americans with Disabilities Act and the D.C. Human Rights Act.

### COUNT TWO

### RETALIATION IN VIOLATION OF THE ADA AND THE DC HRA

61.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 59 of this Complaint as if set forth in full herein.

62.     Plaintiff made a request for accommodation of her disabilities to her supervisor in February 2011.

63.     In the months immediately following this request, Plaintiff's supervisor subjected Plaintiff to increasingly harsh working conditions that exacerbated the medical conditions that necessitated the accommodations.  Plaintiff's supervisor also gave Plaintiff a poor mid-year performance evaluation, in marked contrast to the evaluation that she had given Plaintiff just before Plaintiff's request for accommodations.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD  20814
Tel. (301) 656-6905
Fax (301) 656-6906

64.     AARP's conduct as alleged herein constitutes unlawful retaliation for Dr. Hargrove's assertion of her rights under the Americans with Disabilities Act and the D.C. Human Rights Act.

## COUNT THREE

### CONSTRUCTIVE TERMINATION
### IN VIOLATION OF THE ADA AND THE DC HRA

65.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 63 of this Complaint as if set forth in full herein.

66.     Defendant imposed on Plaintiff working conditions that would have required and did require her to exceed her medically-mandated restrictions on keyboarding.

67.     The Defendant's requirements caused Plaintiff to suffer further injury.

68.     AARP refused to permit Plaintiff to return to work following a medical leave unless Plaintiff agreed to abandon her request for accommodation.

69.     Defendant created working conditions that were so intolerable that a reasonable person would have felt compelled to resign.

70.     Defendant created working conditions that were so intolerable that Plaintiff felt compelled to resign.

71.     Upon information and belief, Plaintiff's supervisor intended to compel Plaintiff to resign or retire.

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

72.     AARP's conduct as alleged herein constitutes a constructive termination of Dr. Hargrove's employment, violating Dr. Hargrove's rights under the Americans with Disabilities Act and the D.C. Human Rights Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court award Plaintiff damages in this matter including:

a.      Lost wages and benefits;

b.      Compensatory and consequential damages;

c.      Prejudgment interest;

d.      Reasonable attorneys' fees and costs; and

e.      Such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through his under signed counsel, herewith demands a trial by jury on all issues.

Respectfully submitted,

S. Micah Salb (D.C. Bar No. 453197)
Mary E. Kuntz, Ph.D., Esq.
Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road
Suite 1100
Bethesda, Maryland 20814
MSALB@LSSLAWYERS.COM
(301) 656-6905
(301) 656-6906 (fax)

Lippman, Semsker & Salb, LLC
7979 Old Georgetown Road, Suite 1100
Bethesda, MD 20814
Tel (301) 656-6905
Fax (301) 656-6906

- 14 -